# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Sid Brooks

| | |
|---|---|
| In re: ) | |
| ) | Bankruptcy Case No. |
| ELIZABETH HUDAK, ) | 08-10478-SBB |
| ) | Chapter 13 |
| Debtor. ) | |
| ) | |
| Last four digits of SS#: 8482, ) | |

**APPEARANCES:**

Michael V. Suchoparek, Esq.  
600 17th Street  
Suite 2800 South Tower  
Denver, CO 80202-5428  
COUNSEL FOR DEBTOR  
ELIZABETH HUDAK

Britney Beall-Eder, Esq.  
999 18th Street, Suite 2201  
Denver, CO 80202-1923  
COUNSEL FOR CREDITOR  
CHASE HOME FINANCE, LLC

**AMENDED[1] MEMORANDUM OPINION AND ORDER DENYING CONFIRMATION OF DEBTOR'S FOURTH AMENDED CHAPTER 13 PLAN OF REORGANIZATION (DOCKET #87) AND ORDER AND NOTICE REGARDING THE APPLICABLE DATES FOR THE FILING OF A FIFTH AMENDED CHAPTER 13 PLAN AND THE SETTING OF AN EVIDENTIARY HEARING REGARDING CONFIRMATION OF DEBTOR'S FIFTH AMENDED CHAPTER 13 PLAN**

THIS MATTER came before the Court on September 16, 2008 for oral argument regarding confirmation of the Fourth Amended Chapter 13 Plan of Reorganization ("Fourth Amended Chapter 13 Plan") filed by Elizabeth Hudak ("Debtor") on June 23, 2008 (Docket #87) and the Limited Objection thereto filed by Chase Home Finance LLC ("Creditor") on July 23, 2008 (Docket #91).

Prior to the hearing on September 16, 2008, a hearing was conducted on July 30, 2008 regarding confirmation of the Debtor's Fourth Amended Chapter 13 Plan. At the close of the July 30, 2008 hearing, the Court ordered the parties to submit briefs on the issues presented. Creditor filed its Brief on August 20, 2008 (Docket # 98) and Debtor filed her Brief on the same

---

[1] This Amended Opinion is issued to acknowledge and incorporate reference to the First Circuit's opinion issued in *In re Nosek*, ___ B.R. ___, 2008 WL 4445707 (1st Cir. October 3, 2008). The First Circuit opinion was issued *after* this Bankruptcy Court heard oral argument and considered issues raised in the within case, Case 08-10478-SBB, but *before* the Bankruptcy Court issued its original opinion on October 20, 2008. The First Circuit's October 3, 2008 opinion does not change or impact the substance of the Bankruptcy Court's October 20, 2008 opinion.

date (Docket #99).  The Court, having reviewed the pleadings, the Briefs, and having heard the arguments of counsel, makes the following findings of fact, conclusions of law, and Order.

I.     **Background**

Debtor filed for relief under Chapter 13 of the Bankruptcy Code on January 16, 2008.

The Debtor has listed Creditor as a secured creditor in Schedule D. Debtor's principal residence is the collateral for the debt owed to Creditor.  The amount of the claim scheduled by the Debtor for Creditor without deducting the value of the collateral is $426,577.00.  The value of the collateral is scheduled at $390,000.00.  Thus, leaving Creditor, according to the Debtor's listing on Schedule D, with an unsecured claim of $36,577.

Creditor filed a Proof of Claim, Claim #13, to evidence its claim and the arrearages owing on the subject loan at the time of the filing of Debtor's bankruptcy.  The Debtor filed an Objection to Creditor's Claim on May 9, 2008 (Docket #35) and disputed the amounts in Creditor's Proof of Claim.  In addition to objecting to the Proof of Claim, Debtor filed a separate Complaint, Adversary Proceeding # 08-01420-SBB, wherein Debtor asserts five claims for relief against the Creditor: (1) violation of the automatic stay; (2) violations of 11 U.S.C. §§ 105(a) and 506(b); (3) assessment of improper and unauthorized fees; (4) contempt of court orders; and (5) violation of the Real Estate Settlement Procedures Act.

Debtor and Creditor resolved the dispute concerning the arrearages in Creditor's Proof of Claim, by stipulation entitled Motion to Approve Settlement and Vacate Evidentiary Hearing Scheduled for June 18, 2008 ("Stipulation Regarding Claim"), filed June 17, 2008 (Docket #77). The Stipulation was approved by this Court on June 18, 2008 (Docket #82).  Specifically, by the Stipulation Regarding Claim the parties agreed, among other things, that:

   a.  The Creditor would waive the late charges set forth in its Third Amended Proof of Claim.

   b.  The Debtor would stipulate to the tax disbursement and insufficient fund charge set forth in the Creditor's Third Amended Proof of Claim.

   c.  With reference to the amounts agreed upon pertaining to Creditor's Third Amended Proof of Claim, Debtor agreed that the payment history provided in Creditor's Amended List of Witnesses and Exhibits provides sufficient information per the Court's Order regarding the same so that no further supporting documentation need be provided to Debtor with regard to the prepetition amounts reflected in Creditor's Proof of Claim.

Creditor filed a Fourth Amended Proof of Claim on June 20, 2008, wherein the claim of the Creditor is calculated as follows based on the parties' Stipulation Regarding Claim:

| | |
|---|---|
| Unpaid Principal Balance and Interest at time of Bankruptcy Filing: | $431,166.01 |
| Escrow (County Tax Disbursement on December 13, 2007): | $3,387.74 |
| Insufficient Fund Charges (4/16/07 payment reversed due to insufficient funds on 4/24/07): | $20.00 |
| Total Debt Due at the time of the Bankruptcy Filing: | $434,573.75 |

Creditor states in its Fourth Amended Proof of Claim that this claim is a secured claim and that to the extent that any part of the claim could not be satisfied by the security interest in the collateral, that such remaining part of the claim shall be a general unsecured claim.

Debtor filed her Fourth Amended Chapter 13 Plan on June 23, 2008 (Docket #87) and included the stipulated amount owed to Creditor therein. The Fourth Amended Chapter 13 Plan includes the following language in section V.G.:

**General Provisions -- These Provision May Alter your Rights -- Please Read Carefully**

1. Confirmation of this plan does not bar a party in interest from objecting to a claim which is not filed in accordance with Federal Bankruptcy Rules 3001 and 3002.

2. Unless otherwise ordered, in the event relief from stay enters for the benefit of a Class 2 or Class 3 creditor, then the subject property shall be deemed surrendered under paragraph C(3), supra, and will receive no further distribution from the Trustee, unless an itemized proof of claim for any deficiency is filed within one-hundred eighty (180) days (or such other period as the Court orders) after the Order for Relief.

3. All contractual provisions regarding arbitration or alternative dispute resolution are rejected in connection with the administration of this Chapter 13 case unless such provisions relate to creditors secured by deeds of trusts on real property retained by the debtor(s).

**4. Confirmation of the plan shall impose a duty of the holders and /or servicers of claims secured by liens on real property to apply the payments received from the Trustee on the prepetition arrearages, if any, only to such arrearages; to**

3

**deem the prepetition arrearages as contractually cured by confirmation; to apply the direct mortgage payments, if any, paid by the Debtor(s) to the month in which they were made under the plan or directly by the Debtor(s), whether such payments are immediately applied to the loan or placed into some type of suspense account; to notify the Trustee, the Debtor(s) and the attorney for the Debtor(s) of any changes in the interest rate for an adjustable rate mortgage and the effective data of the adjustment; to notify the Trustee, the Debtor(s) and attorney for the Debtor(s) of any change in the taxes and insurance that would either increase or reduce the escrow portion of the monthly mortgage payment; and to otherwise comply with 11 U.S.C. Section 524(i).**

**5.      Notification of billing address changes for Class 1, 2,or 3 creditors wishing to notify debtors (sic) of post-petition changes of monthly payments, escrow balances, payment addresses or of delinquent post-petition payments should send correspondence directly to Debtor(s).  Confirmation of this plan shall constitute consent by the Debtor(s) to receive regular monthly statements or invoices as well as notices of changes in payment addresses from Class 1, 2, or 3 creditors.  However, any such correspondence should also be carbon copied to the Debtor(s) attorney of record in this case through the duration of this plan.**

**6.      Creditors seeking fees, charges or cost reimbursement for legal services performed after the filing of this case must apply to the Court for approval of such fees, charges or costs.**

**7.      The Bankruptcy Court shall retain jurisdiction to adjudicate any post-petition charges and/or fees which the holder and/or servicer of the claims secured by the liens on real property avers have accrued since the filing of Debtor(s) voluntary petition if the property is retained by the Debtor(s).[2]**

Creditor filed a Limited Objection to Confirmation on July 23, 2008, with respect to section V.G. and paragraphs 4-7 thereof, asserting that these paragraphs impermissibly modify the Creditor's contractual Deed of Trust rights and lien claim in violation of 11 U.S.C. § 1322(b)(2).  A hearing concerning confirmation of the Fourth Amended Chapter 13 Plan and

---

[2]      Emphasis added.

Creditor's Limited Objection was held on July 30, 2008 and continued to September 16, 2008, whereupon the matters respecting confirmation were taken under advisement.

Debtor maintains that the Creditor's future failure to comply with the specified language included in the Fourth Amended Chapter 13 Plan would be prohibited conduct and a violation of the discharge injunction under 11 U.S.C. § 524(i). It is Creditor's position, as more fully articulated from the pleadings by counsel for the Creditor on the record in open court, that the Fourth Amended Chapter 13 Plan cannot be confirmed because the designated plan language attempts to impermissibly modify Creditor's secured lien in this matter in violation of 11 U.S.C. § 1322(b)(2) and (5).

## II.     Introduction

The Debtor herein has filed a Chapter 13 plan with certain provisions to ostensibly ensure precision and proper accounting of mortgage payments and attendant charges which may be assessed during the course of a Chapter 13 plan and thereafter. Debtor asserts that the language contained in section V.G., paragraphs 4-7, of the Debtor's Fourth Amended Chapter 13 Plan is necessary to serve the purposes of 11 U.S.C. § 524(i). Creditor, on the other hand, argues that 11 U.S.C. § 524(i) is not applicable when the secured debt owed to a creditor will not be discharged under 11 U.S.C. § 1328(c)(1).

The proposed language contained in section V.G., paragraphs 4-7, of the Debtor's Fourth Amended Chapter 13 Plan comes at a time when it is perceived that the residential mortgage industry as a whole has run amok in properly accounting for a mortgage debt in bankruptcy and by tacking on certain "junk" fees such as forced place insurance, as well as tacking on attorney fees and costs, late fees, and other miscellaneous charges (so-called "fee harvesting") during the pendency of a Chapter 13 case.[3]

---

[3] Some might say that the lenders and servicers have utterly failed to meet standards of timeliness, precision, accuracy and businesslike financial management that is otherwise demanded of debtors. The industry's problems are exemplified in the many opinions by courts across this nation including, but not limited to: *In re Hayes,* 393 B.R. 259 (Bankr. D.Mass. 2008); *Padilla v. GMAC Mortgage Corp. (In re Padilla)*, 389 B.R. 409 (Bankr. E.D. Pa. 2008); *In re Varona,* 388 B.R. 705 (Bankr. E.D.Va. 2008); *In re Emery,* 387 B.R. 721 (Bankr.E.D.Ky. 2008); *Nosek v. Ameriquest Mortgage Co. (In re Nosek),* 386 B.R. 374 (Bankr. D. Mass. 2008); *In re Maisel,* 378 B.R. 19 (Bankr. D. Mass. 2007); *Sanchez v. Ameriquest Mortgage Co. (In re Sanchez),* 372 B.R. 289 (Bankr. S.D.Tex. 2007); *In re Schwartz,* 366 B.R. 265 (Bankr. D. Mass. 2007); and *Jones v. Wells Fargo Home Mortgage,* 366 B.R. 584 (Bankr. E.D.La. 2007), *aff'd,* 391 B.R. 577 (E.D.La. 2008) (the district court affirmed the bankruptcy court's rulings with respect to the bankruptcy court's conclusions that the debtor's chapter 13 plan did not violate 11 U.S.C. § 1322(b)(2) and that certain postpetition fees were improper, however, the district court remanded the case back to the bankruptcy court for further consideration regarding the propriety of an equitable remedy in lieu of punitive damages).

The Court also notes that this "accounting" problem is present in many facets of the credit industry. *See, e.g., Nationwide Settlement between U.S. Trustees and Capital One Bank(USA) N.A. Addresses Monies Improperly Collected in Bankruptcy Cases,* http://www.usdoj.gov/ust/eo/public_affairs/press/docs/2008/pr20081002.htm

(continued...)

Unfortunately, because of the careless—some might say "reckless"—behavior seemingly endemic to the mortgage industry and entities servicing those loans, courts have been forced to expend time and resources to sort through mortgage loan histories in preparation for hearings on motions for relief from stay, confirmation, objections to claims, and many other matters so as to issue proper rulings.[4]  Moreover, courts have been forced to implement local rules and procedures to deal with the inadequate records and poor accounting of creditors and those entities servicing loans.[5]

---

[3](...continued)
(last visited Oct. 17, 2008); Liz Pulliam Weston, *'Zombie' Debt is Hard to Kill*, http://articles.moneycentral.msn.com/SavingandDebt/ManageDebt/ZombieDebtCollectorsDigUpYourOldMistakes.aspx (last visited Oct. 17, 2008); and Jane Kim, *Dealing with Debt that Refuses to Die*, Wall Street Journal, Sept. 30, 2008, at B1.

[4]   *See, e.g., Nosek,* 386 B.R. at 380.

[5]   See, e.g., Standing Order 08-1, as adopted by the United States Bankruptcy Court for the District of Kansas. The Standing Order specifically provides, in pertinent part:

> Confirmation of the plan shall impose an affirmative duty and legal obligation on the Real Property Creditor to do all of the following:
>
> 1.   Apply the payments received from the Trustee for payment on the Arrearage, if any, only to such Arrearage pursuant to the plan.  The arrearage shall be deemed paid in full upon the entry of the Discharge Order in this case, unless otherwise ordered by the Court.
>
> 2.   Deem the pre-petition Arrearage (and post-petition Arrearage, if any) contractually current upon confirmation of the plan so as to preclude the imposition of late payment charges or other default related fees and services based solely on any pre-petition default or the payments referred to in paragraph V(B), above.  This obligation will have no force and effect if the case is dismissed or converted.
>
> 3.   Apply the post-petition monthly mortgage payments paid by the Trustee or by Debtor to the month in which they were designated to be made under the plan.  Even if such payments are placed into a suspense, forbearance or similar account, they will be deemed to have been applied to the note pursuant to this subsection.
>
> 4.   If an escrow account is required by the terms of the mortgage, Real Estate Creditor shall, either with its Proof of Claim or within 30 days of the date of the

(continued...)

The question presented to this Court is how far can a debtor go, by way of a debtor's Chapter 13 plan, to ensure transparency and proper accounting by a creditor holding a deed of trust on debtor's principal residence.

### III.  Issues

The specific and predominant issues to be addressed by this Court are:

A.  Whether the language contained in section V.G., and paragraphs 4-7 of Debtor's Fourth Amended Chapter 13 Plan impermissibly modify Creditor's secured lien in contravention of 11 U.S.C. § 1322(b)(2) and is otherwise violative of 11 U.S.C. § 1322(b)(5).

B.  Whether 11 U.S.C. § 524(i) applies to the circumstances set forth herein where the secured debt owed to Creditor will not be discharged under 11 U.S.C. § 1328(c)(1).

### IV.  Discussion

**A.  Does the Language Contained in Section V.G, Paragraphs 4, 5, 6 and 7 of Debtor's Fourth Amended Chapter 13 Plan violate 11 U.S.C. §§ 1322(b)(2) or (5)?**

1.  Section V.G., Paragraph 4

    a.  Assessment of "Junk Fees" Postpetition

Creditor contends that section 1322(b)(2) is violated by the first clause in paragraph 4 of section V.G. of the Debtor's Fourth Amended Chapter 13 Plan. The first clause in paragraph 4 of the Fourth Amended Chapter 13 Plan provides that "upon confirmation of the plan, Lender shall deem all pre-petition arrearages as contractually current at the time of confirmation." 11 U.S.C. § 1322(b)(2) provides that a Chapter 13 plan may:

> modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the

---

[5](...continued)
petition, prepare and provide to Debtor, Debtor's attorney and Trustee an escrow analysis for the current computation year, as defined by Regulation X §6-1423.14 or for the next computation year if that computation year is scheduled to occur within 30 days of the date of the petition to reflect the property post-petition mortgage payment escrow.  This should not include any sums or fees that were or should have been included in the pre-petition Arrearage claim.

>  debtor's principal residence, or of holders of unsecured claims, or
>  leave unaffected the rights of holders of any class of claims.

Debtor asserts that this proposed language is not a modification of the rights of the Creditor, but, instead, is necessary to preclude the loading of "junk" fees to the Debtor's account with Creditor. The "junk" fees being fees attributable to a loan that is in arrears, such as late fees, forced place insurance, and default interest. Moreover, Debtor asserts that section 1322(b)(5) requires lenders to apply regular postpetition payments as if no prepetition default occurred.[6]

The Court understands the concerns the Debtor is attempting to address with respect to the first clause of paragraph 4, namely, to prohibit post-confirmation assessment of "junk" fees as the arrearage is cured through the Fourth Amended Chapter 13 Plan and postpetition payments are made timely.[7] However, *as presently crafted by Debtor's counsel*, Debtor is requesting a modification of Creditor's lien rights. The loan can only be determined to be "contractually current" after, but not before, all prepetition arrearages have been paid as provided through Debtor's Fourth Amended Chapter 13 Plan. To deem a loan contractually current *upon* confirmation without qualifying language is premature and inconsistent with the Bankruptcy Code.[8] In effect, the specific language contained in the Fourth Amended Chapter 13 Plan (1) is inconsistent with Class Two of the Fourth Amended Chapter 13 Plan, providing for the payments of prepetition defaults; (2) has the purported effect of erasing the arrearage at confirmation; and (3) has the potential *res judicata* effect of eliminating the prepetition

---

[6] 11 U.S.C. § 1322(b)(5) provides:

> notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

[7] And, of particular concern as expressed by the Debtor, through counsel, is the assessment of such "junk" fees without notice to the Debtor until after completion of the Fourth Amended Chapter 13 Plan.

[8] *But see, In re Collins,* 2007 WL 2116416, at *14 (Bankr. E.D. Tenn. July 19, 2007), wherein the Honorable Richard Stair Jr., Bankruptcy Judge, held:

> a provision requiring [creditor] to "deem" the prepetition arrearage amounts contractually "current" as of the confirmation is merely procedural and requires only that [the creditor] update its accounting procedures to ensure that the Debtors' account is not subject to any additional charges associated with any prepetition default. In other words, as of the date of confirmation, as long as the prepetition arrearage is provided for in the plan and payments are made as set forth therein, [creditor] must, pursuant to § 1322(b)(5), divide the Debtors' mortgage into "current" prepetition balance and a post-petition maintenance balance which, as of the date of confirmation, is, with respect to the arrearage claim, contractually "current." This provision addresses [creditor's] claims, not its rights, and is not an impermissible modification under § 1322(b)(2).

arrearage whether or not the Debtor completes, or even commences payments under the Fourth Amended Chapter 13 Plan.

Consequently, the Court will *not* confirm the Fourth Amended Chapter 13 Plan with the *unqualified* language "upon confirmation of the plan, Lender shall deem all prepetition arrearages as contractually current at the time of confirmation" as contained in section V.G., paragraph 4. Nevertheless, this Court is *not* rejecting the concept that the loan may be deemed current so as to not have the Debtor accrue the feared "junk" fees. Alternative language, such as "deeming" the loan contractually current on confirmation—but "subject to and contingent on successful completion of mortgage cure payments and regular monthly mortgage payments under the plan" might serve the purpose desired by Debtor and still not modify the creditors lien rights. Or, the language as adopted by the United States Bankruptcy Court for the District of Kansas in its Standing Order 08-1 likely achieves this goal whereby the Kansas Bankruptcy Judges have ordered that "Real Property Creditors":[9]

> Deem the pre-petition Arrearage (and post-petition Arrearage, if any) contractually current upon confirmation of the plan so as to preclude the imposition of late payment charges or other default related fees and services based solely on any pre-petition default or the payments referred to in paragraph V(B), above. This obligation will have no force and effect if the case is dismissed or converted.

b. Application of Mortgage Payments Postpetition

Debtor further seeks in the Fourth Amended Chapter 13 Plan in section V.G., paragraph 4, to require Creditor "to apply the direct mortgage payments paid [to the Creditor] by Debtor to the month in which they were made under the plan whether they are immediately applied to the loan or are placed into suspense." The Court construes this language to apply to "direct mortgage payments" paid by the Debtor for postpetition monthly payments.

The Court concludes that this language *does not* improperly modify the Deed of Trust whereby paragraph 2 of the Deed of Trust provides how payments will be applied. Many courts

---

[9] "Real Property Creditor" is a term defined by the United States Bankruptcy Court for the District of Kansas as:

> the entity claiming a mortgage or a servicer of the mortgage on the real property that is the principal residence of the Debtor. This Standing Order is intended to cover a loan secured by a security agreement in Debtor's principal residence (i.e., promissory note on a manufactured or mobile home), and such lender will be referred to as a "Real Property Creditor" herein for the sake of simplicity, even if some specific references, e.g., to "mortgage" or "escrow analysis" are not strictly applicable.

have noted that mortgage lenders simply do not accommodate for the accounting intricacies created by Chapter 13.[10]

---

[10] *In re Nosek,* ___ F.3d ___, 2008 WL 4445707 (1st Cir. October 3, 2008). The Circuit Court, in vacating the decision of the bankruptcy court, noted among other things:

> The Payment History document, provided only to Nosek on her request and admittedly difficult to decipher, [did show that the loan was current] ... Given [creditor's] prevalence, it is troubling that [creditor] had not established a more efficient and accurate way of handling accounting issues revealed by this case at the time of trial. We fully understand the bankruptcy court's concerns about the practices that it described.

This Bankruptcy Court referred to and recited the select language in *In re Nosek,* 363 B.R. 643 (Bankr. D. Mass. 2007) for the proposition that the accounting and disclosure practices of creditors are often not adequate:

> [Creditor] admitted that "without question, Chapter 13 serves as a comprehensive statutory scheme for treatment of home mortgage claims in Chapter 13 cases and the specific relationship between Nosek, as debtor, and [creditor], as her home mortgage lender." [Creditor] made this point in arguing to the District Court that the Bankruptcy Code preempted state law remedies. Notwithstanding this, [creditor] argued that Chapter 13 did not require lenders to change their accounting procedures just because a debtor filed for bankruptcy. "If Nosek is correct that [creditor] was required to apply payments in a manner different from the underlying contracts, [creditor] (and the other mortgage servicers) would be forced to constantly monitor each debtor's bankruptcy case, readjust their accounting methodologies, and continually recalculate how payments should be applied." That is exactly the point; [creditor] must adjust its accounting practices because of Nosek's bankruptcy. The Bankruptcy Code is not a cafeteria; lenders do not decide which of its provisions apply to them. Once a debtor files for Chapter 13, the Bankruptcy Code, and only the Bankruptcy Code, dictates the protections (such as the preemption of state law remedies) afforded to the lender and the obligations (such as the separate accounting for pre- and post- petition payments) required of them.
>
> [Creditor] next argued that "because [creditor] cannot use its computer system to track bankruptcy payments and because no software exists to track such payments, [creditor] must account for payments from Chapter 13 debtors manually." [Creditor] offers this as an apparent excuse as to why Nosek's payment history was inaccurate. The Court is unpersuaded. Even if [creditor] must manually account for these payments (though the Court is not convinced that a computer system could not be developed with the appropriate investment of time and money), [creditor] is not excused from doing it right, even if it is an administrative burden. It is not sufficient that [creditor] only *internally* accounted Nosek with having made the payments and *internally* considered her current. This must be reflected on [creditor's] *external* payment history, which is shared with the debtor and the outside world and which is usually necessary for a refinancing, something a lender of [creditor's] experience should recognize. In sum, [creditor] is simply unable or unwilling to conform its accounting

(continued...)

Paragraph 2 of the Deed of Trust specifically sets forth that "payments shall be applied to each periodic payment in the order in which it became due." If the plan payments are applied in the order in which they become due under the Deed of Trust, by definition, the payments will be applied to the oldest month in arrears first. The consequence of such application of payments would be to leave the loan in a "late" status for the duration of a plan. While requiring post-petition mortgage payments made under a plan to be credited to the post-petition month in which the payment is made may be an accounting headache for Creditor, it does not improperly modify the loan under 11 U.S.C. § 1322(b)(2). More importantly, leaving the loan in "late" status (and, particularly if assessing junk fees) for the duration of a confirmed Chapter 13 plan and beyond is likely violative of 11 U.S.C. §§ 362[11] and 524(a)(2) and (i). Moreover, as advised by counsel and as this Court is cognizant, new and more facile accounting software is being developed and now is or soon will be utilized throughout the mortgage and lending industry.

Finally, this type of provision is expressly ordered by the Bankruptcy Court in the District of Kansas, whereby that Court requires mortgage creditors to:

> Apply the post-petition monthly mortgage payments paid by the Trustee or by Debtor to the month in which they were designated to be made under the plan. Even if such payments are placed into a suspense, forbearance or similar account, they will be deemed to have been applied to the note pursuant to this subsection.[12]

c.     Notification of Changes in Payments

The next challenged provision that Debtor has included in her Fourth Amended Chapter 13 Plan in section V.G., paragraph 4, is that the Creditor be required to "notify the Debtor, Debtor's counsel and the Trustee of any change in interest or escrow that would affect the Debtor's payment to the Lender."

Creditor asserts that the Deed of Trust specifies how changes in payments must be noticed to the borrower—i.e., the Debtor. Creditor asserts that there is nothing in the Bankruptcy Code that requires notification to the Debtor, Debtor's counsel and the Trustee and

---

[10](...continued)
practices to what is required under the Bankruptcy Code, something this Court can encourage by assessing punitive damages under Section 105.

*In re Nosek,* 363 B.R. 643, 649-50 (Bankr. D.Mass. 2007)(citations omitted), *vacated,* ___ F.3d ___, 2008 WL 4445707 (1st Cir. October 3, 2008).

[11]     This Court is not making a final determination with respect to any alleged violation of the automatic stay because that matter is before this Court by way of the separate adversary proceeding, Adversary Proceeding No. 08-01420-SBB.

[12]     Standing Order 08-1, as adopted by the United States Bankruptcy Court for the District of Kansas.

11

any provision in the Fourth Amended Chapter 13 Plan for this violates the anti-modification language of section 1322(b)(2). The Court does not agree, at least in part. For the duration of the Fourth Amended Chapter 13 Plan, it is not inconsistent with FED.R.BANKR.P. 7004(b)(9), to require notice to the Debtor and Debtor's counsel.[13] Moreover, such a change in notification, in this Court's opinion, does not substantively modify the rights of the Creditor any more than the filing of the bankruptcy itself. Further, the Deed of Trust itself allows for the Debtor to notify Creditor of other addresses whereby loan information and notices should be provided.

The Court therefore does not find this provision offensive under the law and will allow the language to stand in the proposed Plan and any amended Chapter 13 plan to be filed hereafter.

### B. Section V.G., Paragraph 5

Section V.G., Paragraph 5 is another noticing provision in Debtor's Fourth Amended Chapter 13 Plan and thereby Debtor states:

> Notification of billing address changes for Class 1, 2,or 3 creditors wishing to notify debtors (sic) of post-petition changes of monthly payments, escrow balances, payment addresses or of delinquent post-petition payments should send correspondence directly to Debtor(s). Confirmation of this plan shall constitute consent by the Debtor(s) to receive regular monthly statements or invoices as well as notices of changes in payment addresses from Class 1, 2, or 3 creditors. However, any such correspondence should also be carbon copied to the Debtor(s) attorney of record in this case through the duration of this plan.

Initially, Creditor objected also to paragraph 5. However, based upon this Court's conclusions with respect to paragraph 4 set forth above, and the statements of Creditor's counsel, it appears that concerns with respect to paragraph 5 are resolved either consensually or by this Court's ruling above.

---

[13] Routinely, and as a matter of professional practice, debtor's counsel serve as debtor's agent and legal representative during the bankruptcy case through the course of debtor's performance under a confirmed case.

### C. Section V.G., Paragraph 6

Section V.G., Paragraph 6 provides that:

> Creditors seeking fees, charges or cost reimbursement for legal services performed after the filing of this case must apply to the Court for approval of such fees, charges or costs.

Debtor has invoked 11 U.S.C. §1322(b)(5) in providing for Creditor's secured claim in her Fourth Amended Chapter 13 Plan and seeking to cure her arrears through the Fourth Amended Chapter 13 Plan. Moreover, Debtor asserts that such treatment is vital to the enforcement of 11 U.S.C. § 524(i). Thus, Debtor must provide for maintenance of payments while the case is pending, in addition to making plan payments sufficient to cure the pre-petition delinquency. Debtor must do so in conformity with the provisions of 11 U.S.C. § 1322(e), which states that:

> Notwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.

The rights and obligations of the parties may change during the course of a Chapter 13 plan. As one court noted:

> In particular, the debtor's payment obligation to the secured creditor may not remain fixed for a variety of reasons, such as: (1) changes in escrow requirements for taxes and insurance, (2) interest rate adjustment in variable rate mortgages, [and/or] (3) the assessment of legal expenses incurred post petition that the creditor may be entitled to pass on to the debtor under the terms of the parties agreement.[14]

It is Creditor's position that the Deed of Trust should control how fees are applied to the loan, as well as how the Debtor receives notifications of interest, charges, fees and other costs assessed to the subject loan. It is Creditor's position that Creditor should not be required to apply to the Court for approval of fees allowed for under the terms of its Deed of Trust.

This Court agrees with the Creditor's argument, that is, Creditor has no obligation to routinely obtain court approval of postpetition fees, charges, or costs, if any, to be reimbursed for legal services performed *after the filing of the case under the terms of the Deed of Trust*

---

[14] *Padilla v. GMAC Mortgage Corp. (In re Padilla),* 389 B.R. 409, 433-34 (Bankr. E.D.Pa. 2008).

when those postpetition fees, charges, or costs for legal services are sought from the *Debtor* and not the *estate*.[15] This Court, however, retains concurrent jurisdiction to enforce provisions of the Fourth Amended Chapter 13 Plan and 11 U.S.C. § 524, and otherwise insure compliance with the Bankruptcy Code. Thus, this Court could consider any objection raised by the Debtor to fees charged, or any dispute under a plan by either party for the duration of the Chapter 13 plan. Nevertheless, it shall not be the Creditor's obligation to seek approval each time fees are charged. That process, in and of itself, will only generate more fees for both the Creditor and Debtor and, potentially, overwhelm the Court with fee disputes, large and small. Consequently, the Fourth Amended Chapter 13 Plan will not be confirmed with this particular language.

### D. Section V.G., Paragraph 7

Section V.G., Paragraph 7 of the Debtor's Fourth Amended Chapter 13 Plan provides:

> The Bankruptcy Court shall retain jurisdiction to adjudicate any post-petition charges and/or fees which the holder and/or servicer of the claims secured by the liens on real property avers have accrued since the filing of Debtor(s) voluntary petition if the property is retained by the Debtor(s).

As is discussed above, this Court does *not* conclude that Creditor has an obligation to routinely obtain this Court's approval of postpetition fees, charges, or costs to be reimbursed for legal services performed after the filing of the case under the terms of the Deed of Trust when those postpetition fees, charges, or costs for legal services are sought from the Debtor and not the estate. Moreover, as crafted by the Debtor, this provision goes on in perpetuity. That is, this provision does *not* seem to end at the conclusion of the Debtor's Chapter 13 Plan and the closing of the case. In so doing, the Debtor proposes a provision that is: (1) inconsistent with the Deed of Trust; (2) far exceeds an appropriate use of 11 U.S.C. § 105(a); (3) is in conflict with 11 U.S.C. § 1322(e); and (4) and potentially sets a snare for the unwary creditor under 11 U.S.C. § 524(i).

This Court does, however, acknowledge and agree with Debtor, that the Court may retain jurisdiction of a Chapter 13 case after confirmation.[16] Thus, this Court would allow the following language to be included in the Chapter 13 Plan:

> The Bankruptcy Court may retain jurisdiction during the pendency of the Chapter 13 case to adjudicate charges and/or fees which the holder and/or servicer of the claims secured by the liens on real

---

[15] *Id.* at 418-19.

[16] *Jones v. Wells Fargo Home Mortgage (In re Jones),* 366 B.R. 584, 594 (Bankr. E.D.La. 2007) *aff'd* 391 B.R. 577 (E.D.La. 2008) and *Sanchez v. Ameriquest Mortgage Co. (In re Sanchez),* 372 B.R. 289, 306 (Bankr. S.D. Tex. 2007).

> property asserts have accrued since the filing of Debtor(s) voluntary
> petition if the property is retained by the Debtor(s).

**E.  Does 11 U.S.C. § 524(i) Apply to the Circumstances Set Forth Herein Where the Secured Debt Owed to Creditor Will Not Be Discharged under 11 U.S.C. § 1328(c)(1)?**

The last sentence of section V.G., paragraph 4 provides that holders and/or servicers of claims secured by liens on real property are required "to otherwise comply with 11 U.S.C. Section 524(i)." 11 U.S.C. § 524(i) provides that:

> The willful failure of a creditor to credit payments received under a
> plan confirmed under this title, unless the order confirming the plan
> is revoked, the plan is in default, or the creditor has not received
> payments required to be made under the plan in the manner required
> by the plan (including crediting the amounts required under the
> plan), shall constitute a violation of an injunction under subsection
> (a)(2) if the act of the creditor to collect and failure to credit
> payments in the manner required by the plan caused material injury
> to the debtor.

Simply put, section 524(i) provides "a remedy to debtors against a creditor who willfully fails to credit plan payments to the debtors' material injury."[17]

Creditor argues that 11 U.S.C. § 524(i) does not apply to the circumstances of this case where the secured debt owed to Creditor in this action will not be discharged under 11 U.S.C. § 1328(c)(1). As crafted in paragraph 4 of section V.G. of the Debtor's Fourth Amended Chapter 13 Plan , the Debtor's Plan does not, standing alone, require this Court to consider this argument based on the facts of this case. The language provided in Debtor's Fourth Amended Chapter 13 Plan does not necessarily *force*—as Creditor would suggest—violations of the discharge injunction under 11 U.S.C. § 524—i.e., it does not set a snare for the unwary inconsistent with the Bankruptcy Code. And, as presented in Debtor's Fourth Amended Chapter 13 Plan, compliance with 11 U.S.C. § 524(i) is *only required where it would apply*. Unlike the Chapter 13 plan discussed in the *Anderson* opinion, this language does not "misstate what is required."[18]

Nevertheless, it is clear from the arguments of counsel and their briefs that it is the intention of the Debtor to make applicable 11 U.S.C. § 524(i) to this Creditor. Pursuant to 11 U.S.C. § 1328(c)(1):

---

[17]  *In re Anderson*, 382 B.R. 496, 501 (Bankr. D.Or. 2008).

[18]  *Id.* at 504. Moreover, it is not so specific as to require the Debtor to "track [11 U.S.C. § 524(i)'s] language" exactly.

15

> A discharge granted under subsection (b) of [11 U.S.C. § 1328] discharges the debtor from all unsecured debts provided for by the plan or disallowed under section 502 of this title, except any debt ... provided for under section 1322(b)(5) of this title...

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 has virtually no legislative history with respect to whether 11 U.S.C. § 524(i) applies where an obligation to a creditor would not be discharged under 11 U.S.C. § 1328.[19]  The House Report to section 524(i) provides:

> Section 202 of the Act amends section 524 of the Bankruptcy Code in two respects.  First, it provides that the willful failure of a creditor to credit payments received under a confirmed chapter 11, 12, or 13 plan constitutes a violation of the discharge injunction if the creditor's action to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor. This provision does not apply if the order confirming the plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan in the manner prescribed by the plan.  *Second, section 202 amends section 524 of the Bankruptcy Code to provide that the discharge injunction does not apply to a creditor having a claim secured by an interest in real property that is the debtor's principal residence if the creditor communicates with the debtor in the ordinary course of business between the creditor and the debtor and such communication is limited to seeking or obtaining period payments associated with a valid security interest in lieu of the pursuit of in rem relief to enforce the lien.*[20]

Section 524(a) previously was limited to violations of the discharge order.[21]  In other words, it addressed violations *after* the entry of the discharge order.  Section 524(i), however, is according to one commentator, not limited to acts that take place after discharge.[22]  Thus, it would address acts during the course of performance under a Chapter 13 plan.  It would not, however, apply if confirmation of the plan has been revoked, the plan is in default, or the

---

[19] *See, In re Collins,* 2007 WL 2116416, at *4, n. 5 (Bankr. E.D. Tenn. July 19, 2007).

[20] H.R. Rep. No. 31, 109th Cong., 1st Sess. 202 (2005)(emphasis added).  The emphasized text appears to be in reference to 11 U.S.C. § 524(j).

[21] 4 *Collier on Bankruptcy* ¶ 524.08, at 524-55 (Alan N. Resnick and Henry J. Sommer ed., 15th ed. Rev. 2005).

[22] *Id.*

creditor has not received the plan payments as required by the plan.[23]  Moreover, in order for a debtor of have a cause of action under 11 U.S.C. § 524(i), the debtor must show that creditor has *willfully* failed to credit payments in a manner in which debtor has been materially injured.[24]

The provision proposed by the Debtor's Fourth Amended Chapter 13 Plan is designed to compel compliance with a confirmed plan and  force transparency and proper accounting by Creditor.  The Court concludes that 11 U.S.C. § 524(i) *does* apply to this Creditor.[25]

First, the legislative history—what little there is of it—reflects that what Congress was concerned with in implementing section 524(i) and its companion provision at 524(j)[26] was:

---

[23]   *Id.*

[24]   *Id.*

[25]   *Id.*  The commentator in *Collier on Bankruptcy* noted that:

> the material injury requirement will be met in virtually every case involving a secured creditor, because the failure to properly credit payments will almost always result in a higher payoff balance for the debtor and therefore a larger lien on the debtor's property than if the payments were credited properly.  A creditor that has collected the payments made by the debtor under the plan and credited them in a manner leading to a higher balance remaining on a debt has caused a material injury to the debtor.  A common example of such injury is the assessment of postpetition charges to the debtor that are not in accordance with the terms of the confirmed plan.  Obviously, if a creditor could subvert the terms of a plan simply by adding such charges, the cure of a default under the plan would be meaningless.

By implication, this commentator seemed to acknowledge that those creditors to whom the secured debt was owed and not be discharged under 11 U.S.C. § 1328(c)(1) are *not* excluded from 11 U.S.C. § 524(i).  This Court would also note that, although the First Circuit did not reach a conclusion on this issue in *Nosek*, in *dicta,* the First Circuit noted:

> As part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Congress added a new provision to the Bankruptcy Code, § 524(i), which provides an explicit remedy for certain creditor violations related to Chapter 13 plans ... Because Nosek's claim was filed prior to the provision's effective date—October 17, 2005—it did not apply to this case.

*In re Nosek,* ___ B.R. ___, 2008 WL 4445707 (1st Cir. October 3, 2008).  Inasmuch as the creditor in *Nosek* was a mortgage lender, *and by implication thereof*, it would appear that, if the provision *was* in effect, section 524(i) *may* have applied to the creditor in *Nosek*.

[26]   11 U.S.C. § 524(j) provides:

> Subsection (a)(2) does not operate as an injunction against an act by a creditor
> that is the holder of a secured claim, if—
>    (1) such creditor retains a security interest in real property that

(continued...)

    (A)    protecting debtors from *any* creditor failing to collect and credit payments in the manner required by a confirmed plan and

    (B)    protecting secured creditors from liability for "ordinary course of business communications" by a creditor with a debtor. In other words, Congress made sure that a mortgage lender sending an accurate monthly statement would not be subject to liability under section 524(i).

Second, Congress, in 11 U.S.C. § 524(i) is not specific in defining the type of creditor (i.e., secured or unsecured) to which the provision refers. Yet, in 11 U.S.C. § 524(j), Congress specifically excluded "ordinary course of business communications" from "*a creditor having a claim secured by an interest in real property*" to a debtor. By implication, it would appear that Congress did *not* exclude those creditors where the secured debt owed to the creditor would not be discharged under 11 U.S.C. § 1328(c)(1). Thus, any creditor having a claim secured by an interest in real property who is misapplying payments may potentially be liable under 524(i).

Third, section 524(i) and companion section 524(j), in the context of section 524, appear as stand-alone provisions within section 524. That is, violation or exclusion from violation is not dependent upon whether the debt will be or is discharged. In other words, whether the debt is discharged or not under 11 U.S.C. § 1328(c)(1) is irrelevant to liability under section 524(i).

Consequently, based upon this Court's analysis of 11 U.S.C. § 524(i) as applied to this case, the Court will permit this language to remain in any amended Chapter 13 Plan proposed by the Debtor.

    **E.**    **Closing Comments**

As this Court has expressed on the record in open court, the matter presented by this Debtor in this case is one that likely is appropriate to be dealt with, eventually, by way of a General Procedural Order of this Court, Local Rule, or a Federal Rule of Bankruptcy Procedure. Ideally, this is a matter that should be addressed by some standardized language agreed to by

---

[26](...continued)
    is the principal residence of the debtor;
    (2) such act is in the ordinary course of business between the creditor and the debtor; and
    (3) such act is limited to seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien.

The Court would note that section 524(j) requires that all three sub-parts be satisfied by the use of the conjunctive word "and." It appears that the conjunctive used herein is *not* in error. *C.f., In re TCR of Denver, LLC,* 338 B.R. 494 (Bankr. D. Colo. 2006) (in examining 11 U.S.C. § 1112(b), this Court concluded that the use of the word "and" was in error and should have been "or"); *See* 1A Norman J. Singer, *Statutes and Statutory Construction* § 21:14 (6th ed. 2003).

attorneys for debtors, creditors, and the Standing Chapter 13 Trustee. Otherwise, this Court will be inundated by a flood of litigation with respect to *ala carte* provisions in Chapter 13 plans.

V. **Order**

IT IS THEREFORE ORDERED that this Court DENIES confirmation of the Fourth Amended Chapter 13 Plan of Reorganization filed by Debtor on June 23, 2008 (Docket #87).

IT IS FURTHER ORDERED that the Debtor shall file, on or before **October 31, 2008**, a Fifth Amended Chapter 13 plan along with a notice of deadlines to the Standing Chapter 13 Trustee, Britney Beall-Eder, counsel for Creditor, and all creditors adversely affected by the amendment which (a) establishes the deadline of **November 26, 2008** for the filing of objections to confirmation, (b) schedules a continued evidentiary hearing regarding plan confirmation set for **Wednesday, December 10, 2008 at 1:30 p.m. in Courtroom E, U.S. Custom House, 721 19th Street, Denver, Colorado 80202** and (c) establishes the deadline of **December 1, 2008** for the filing and exchanging of lists of witnesses and exhibits. Failure to file the amended Chapter 13 plan, notice of deadlines and certificate of service on or before **October 31, 2008** shall establish cause for dismissal of the within case. If confirmation is not possible at the time of the continued hearing , the Court will entertain requests for dismissal if payments are not current to the Standing Chapter 13 Trustee.

IT IS FURTHER ORDERED that counsel for the Debtor shall timely file the appropriate Certificate re: Objection to Confirmation or Verification of Confirmable Plan in accordance with T.L.B.R. 3015-1 (d)(3) or (f)(1) on or before **December 1, 2008.** In the event no objection to confirmation is filed with the Court, Counsel shall file the Verification of Confirmable Plan and contact the Court to ascertain whether or not the hearing shall be vacated by the Court.

Dated this 24th day of October, 2008.

BY THE COURT:

*Sid Brooks*
_____
Sidney B. Brooks,
United States Bankruptcy Judge